# Richmond

## Virginia Electric and Power Co. v. Beulah May Clark, et al.

April 13, 1942.

Record No. 2512.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*T. Justin Moore* and *Archibald G. Robertson,* for the plaintiff in error.

*J. H. Rives, Jr., Ellsworth Wiltshire* and *John W. Fussell,* for the defendants in error.

CAMPBELL, C. J., delivered the opinion of the court.

Beulah May Clark, plaintiff, brought an action at law against Virginia Electric and Power Company and W. S. Dunning, defendants, to recover damages for personal injuries sustained in a collision between a station wagon operated by Dunning and defendant company's bus on which she was riding as a passenger. There was a trial by a jury and the plaintiff recovered a judgment against both defendants, in the sum of $7,000.

[■] Each defendant filed a petition for a writ of error and supersedeas. The petition of defendant, Dunning, was refused, the effect of which was to affirm the judgment against him. The petition of the company, which sought a writ of error against both the plaintiff and Dunning, was granted.

It is the contention of the company that the negligence of Dunning was the sole proximate cause of the accident result-

ing in plaintiff's injuries. There is no claim that the verdict was excessive.

The collision between a bus of the company and the station wagon, owned and operated by Dunning, occurred at approximately 12:55 P. M., at or near the intersection of Third and Canal streets in the city of Richmond. Canal street which is forty-one feet, six inches wide, runs east and west. Third street, which is forty feet, six inches wide, runs north and south. Canal street is an arterial street, and on Third street there are stop signs requiring traffic on Third street, both north-bound and south-bound, to come to a full stop before entering Canal street.

The case of the plaintiff, as determined by the verdict of the jury in her favor, shows that the accident occurred in the following manner: The bus, immediately prior to the accident, had been traveling northwardly on Third street, while Dunning was proceeding westwardly on Canal street. When the operator of the bus approached the intersection, he came to a full stop. He then started out from the stop sign and proceeded approximately one-third of the way into Canal street where he stopped or hesitated, due, no doubt, to the fact that a convoy of army trucks was being escorted by a traffic officer in an eastwardly direction over Canal street. At this point the traffic officer, unaware of the approach of Dunning, signaled the operator of the bus to proceed. This he endeavored to do by "cutting the corner" in his effort to make a left turn in order to proceed westwardly on Canal street. It was while the bus was in this position that the collision occured. The right front corner of the bus came into contact with the left side of the station wagon and, as a result of the impact, plaintiff was thrown against the interior of the bus and suffered the injury complained of.

It is assigned as error: "That the testimony fails to convict the defendant Virginia Electric and Power Company of any negligence which either proximately caused or efficiently contributed to the collision, and both the verdict of the jury and the judgment of the trial court are accordingly contrary

to the law and the evidence and without evidence to support them."

■ ■ The negligence of the defendant, Dunning, has been established by the verdict of the jury, the judgment of the trial court and the affirmance of the judgment by this court; therefore, upon this writ of error, we are only concerned with the judgment against the Virginia Electric and Power Company. Was the company guilty of negligence which either proximately caused, or efficiently contributed to the collision? In our opinion the question must be answered in the affirmative. J. C. Feddy, the operator of the bus, testified that in response to the signal of the traffic officer who was escorting the Army convoy, he proceeded into Canal street; that he did not see the approaching station wagon; that he made an ordinary turn into Canal street; that he "never saw the station wagon until it swerved directly in front of the bus."

It is shown by the testimony of witnesses who were passengers upon the bus at the time of the accident and who were introduced by the defendant company, that the station wagon, operated by Dunning, was in plain view of Feddy, had he kept a proper lookout.

Mrs. H. C. Williams, Jr., in answer to the question: "Tell the jury how the collision occurred," testified as follows:

"Well, the bus was coming down Third, and when it came to Third and Canal there was a stop sign, and the driver stopped. I looked both ways, because I always do at a cross street to be sure there is nothing coming, and I saw the station wagon coming up the hill, and as the bus drove on out, I always look out the window when I am riding on the bus, and I saw the station wagon continue to come up the street, and the bus made a left-hand turn into Canal, that was going west on Canal then, and the station wagon came right on up the street, and I thought it surely would stop behind the bus, but it didn't, so I watched it come around the side or trying to get between the right-hand side of the bus and the street, and there was a car parked there, and he couldn't quite make it, and so drove into the bus, almost finished turning out

straight, and it made that angle, and the station wagon couldn't quite get through, and they collided."

Mrs. C. H. Dyer testified that she was sitting on the front seat of the bus; that she saw the station wagon in the middle of the block before the bus came to a stop; that it was coming at a "pretty rapid rate."

To the same effect is the evidence of Dunning and other witnesses.

It is argued by counsel for the defendant company that: "Regardless of all other considerations in the case it would seem that the operator of the bus was fully justified in obeying the police officer and acting as he did."

This argument is fully answered by the following instruction which was given without objection, and thus became the law of the case: "The Court instructs the jury that even though they believe from the evidence that the traffic officer signalled the bus driver to proceed on in the intersection and thence westwardly on Canal Street, the bus driver nevertheless should not have so proceeded if a reasonably prudent person similarly situated would not have so proceeded in the exercise of the highest degree of practical care for the safety of the passengers on the bus."

In our opinion the evidence clearly shows that the operator of the bus failed to keep a proper lookout for approaching traffic, as required by law, and this dereliction upon his part justified the finding of the jury that such failure was an efficiently contributing cause of the accident.

It is further shown by the evidence that the operator of the bus was guilty of negligence in "cutting the corner" at the intersection in violation of the statute, section 2154 (121). While this action of the operator may not have been the sole proximate cause of the accident, it was competent evidence upon which to base a verdict that it was a contributing and efficient cause of the accident.

The last assignment of error is: "The verdict of the jury resulted from a misapprehension of the law by the jury and occasions injustice to the defendant Virginia Electric and Power Company."

This assignment of error is based upon the affidavit of A. L. Wills which is in part, as follows: "I served as a juror in trial of action entitled Beulah May Clark, Plaintiff, v. W. S. Dunning and Virginia Electric and Power Company, Defendants, in Hustings Court, Part II, of the City of Richmond, Virginia, December 10th and 11th, 1940, which resulted in a verdict of $7,000.00 for the plaintiff against both defendants, to be paid jointly and equally by both defendants.

"While the jury was considering of its verdict all of the jurors were of opinion that both defendants should be held liable to the plaintiff, but that more than fifty per cent (50%) of the damages awarded to the plaintiff should be paid by one of the defendants and less than fifty per cent (50%) of such damages should be paid by the other defendant; and the jury desired to return its verdict accordingly.

"The instructions of the Court, however, did not inform the jury that a verdict might be returned for the plaintiff against both defendants to be paid otherwise than equally by both defendants, and it was my understanding and the understanding of all the other jurors that if the jury returned a verdict for the plaintiff against both defendants to be paid otherwise than equally by both defendants, such verdict would be unlawful and would be set aside by the Court. The jury accordingly returned a verdict for the plaintiff against both defendants to be paid jointly and equally by both defendants.

"If the jury could lawfully have returned a verdict for the plaintiff against both defendants, more than fifty per cent of the damages awarded to the plaintiff to be paid by one defendant and less than fifty per cent of such damages to be paid by the other defendant, and if the jury had known that such a verdict could lawfully have been returned, I am of opinion that such a verdict would have been returned and that the verdict which was actually returned for the plaintiff against both defendants to be paid jointly and equally by both defendants resulted from a misconception of the law by the jury and occasions injustice to one of the defendants."

While this assignment of error presents an interesting

question relative to a proper construction of section 5779, which deals with contribution among wrongdoers, we are prevented from considering it for several reasons. In the first place, this question was not raised in the court below during the trial of the case. No instruction was requested which would have permitted the jury to assess against either defendant a larger proportion of the damages. In the second place, the affidavit does not affirmatively show that the jury would have assessed Dunning with the larger proportion of the damages so found. The contention that the jury would have done so is but a mere inference.

Upon the whole case, we are of opinion that the judgment of the trial court is plainly right and should be affirmed.

*Affirmed.*